UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

Bernard Singleton,

                    Plaintiff,                    CV-04-1526 (CPS)

     - against -                                  MEMORANDUM OPINION
                                                  AND ORDER

Federal Bureau of Prisons and
Attorney General John Ashcroft,

                    Defendants.

-----------------------------------------X

SIFTON, Senior Judge.

     Plaintiff, Bernard Singleton, commenced this action by

filing a complaint invoking this Court's federal question

jurisdiction against defendants the Federal Bureau of Prisons[1]

("BOP") and the United States Attorney General.[2]  The complaint

sets forth claims for relief based on race and gender

discrimination and retaliation, in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq.* ("Title

---

[1] Defendant correctly argues, and plaintiff does not dispute, that the
Bureau of Prisons is not a proper defendant under Title VII. Title VII
explicitly mandates that federal employees must bring suit against the head of
the department, agency, or unit alleged to have discriminated against him or
her. *See,* 42 U.S.C. §2000e-16(c)("the head of the department, agency or unit
as appropriate, shall be the defendant."). The Bureau of Prisons is a
"department, agency, or unit within the meaning of Title VII. *See,* 42 U.S.C.
§2000e-16(a). The Federal Bureau of Prisons is an agency within the Department
of Justice; the head of the Department of Justice is the Attorney General of
the United States, and as such, the Attorney General is the only proper
defendant in plaintiff's Title VII action. *See, Dean v. U.S.* , 484 F.Supp. 888
(D.C.N.D. 1980). Accordingly, the suit against the Bureau of Prisons is
dismissed for lack of subject matter jurisdiction and will proceed solely
against the Attorney General.

[2] The case was originally brought against then Attorney General John
Ashcroft. Current Attorney General Alberto Gonzalez is automatically
substituted as a party defendant pursuant to Federal Rule of Civil Procedure
25(d)(1).

VII"). The defendant now moves for summary judgment dismissing the complaint pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below the defendant's motion for summary judgment is granted.

BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 statements[3] and the affidavits and exhibits submitted in connection with this motion. Disputes are noted.

Plaintiff, Bernard Singleton, is an African American male. In 1985 he was hired by the Bureau of Prisons to work at the Federal Correctional Institute at Otisville ("FCI-Otisville") as a Wage Leader ("WL")/Warehouse Worker, a WL-3 grade position. In May 1999 Plaintiff was promoted from a Wage Leader/Warehouse Worker to his present position as a Warehouse Supervisor ("WS") at the Metropolitan Correctional Center in New York ("MCC"). His current grade level is WS-5. Plaintiff's duties as Warehouse Supervisor include: overseeing the prison laundry, commissary and warehouse; ordering merchandise; maintaining proper receipts and inventory control; and providing evaluations for a staff of

---

[3] Defendant argues generally that because plaintiff's Rule 56.1 Counterstatement of Material Facts contains only conclusory or speculative allegations the entire Counterstatement should be struck and defendant's correspondent paragraphs should be deemed admitted and undisputed. *See e.g. Perkins v. Sloane Kettering Cancer Ctr.*, 2005 WL 24530878, *14 (S.D.N.Y. 2005)(striking portions of plaintiff's 56.1 statement as conclusory, speculative and unsubstantiated). Rather than address the question of whether all of defendant's Rule 56 statements should be deemed admitted, each statement is addressed below as it becomes relevant.

twenty inmates and four BOP Employees.

On December 28, 1996 plaintiff filed an EEO discrimination complaint against MCC Assistant Warden Carl Vitanza.[4] On May 15, 1997 plaintiff acknowledged in writing that the 1996 EEO complaint had been satisfactorily resolved.

Plaintiff Not Hired for Otisville Position

On March 19, 1998 the Northeast Regional Office of the Bureau of Prisons advertised the position of GS-11 Support Services Supervisor at FCI-Otisville ("FCI-Otisville Position")under vacancy number 09-NERO-050. The announcement specified that applicants for the position must demonstrate the following:

> 1. Ability to communicate orally.
> 2. Ability to plan and organize work.
> 3. Skill in use of personal computer.
> 4. Ability to supervise and develop potential of subordinates.
> 5. Knowledge of warehouse/inventory management procedures.

(FCI-Otisville Position Announcement No. 98-NERO-050, Def. Ex. C).

On April 1, 1998 Aura Gonzalez, a Hispanic female, applied for the FCI-Otisville Position. At the time of her application Gonzalez was working as a GS-7 Accounting Technician. Her most recent annual evaluation was an "exceeds" evaluation. More

---

[4] The parties have not described the subject of this EEO complaint.

specifically, the evaluation stated that Gonzalez had excellent communications skills and had used her prior technical experience to implement a new computer program in the business office. Gonzalez's prior work experience included work as a GS-9 Inventory Management Specialist at the Federal Detention Center in Miami Florida from June 13, 1993 to January 7, 1996.

On April 2, 1998 plaintiff applied for the FCI-Otisville position. At that time, plaintiff's most recent annual evaluation was an "exceeds" evaluation which rated the plaintiff fully successful in directing work and supervising inmates. However, the evaluation indicated concerns in the first six months of that rating period with respect to plaintiff's planning, monitoring and evaluating operations, maintaining and providing expertise and his ability to communicate.

Both Gonzalez and Singleton were ranked as among the top five applicants and placed on the "Best Qualified List" for the FCI-Otisville Position.[5] The other three candidates on the "Best Qualified List" were a Hispanic male, an Asian Pacific Islander male and another African-American male.

Northeast Regional Director David Rardin, a Caucasian male,

---

[5] Pursuant to the Federal Bureau of Prisons Human Resources Management Manual ("Human Resources Manual") a "promotion board" compiles a list of "Best Qualified Candidates." No particular number of candidates must be placed on this list. In fact, if no qualified candidates exist the board is not required to place any names on the list. Thereafter the list is provided to the selecting official. The selecting official chooses an individual from the Best Qualified List for the available position. (Federal Bureau of Prisons Human Resource Management Manual, Def. Ex. J, Chapter 3, Page 37.)

was the selecting official for the FCI-Otisville Position.
Although when selecting applicants Rardin often receives input or
recommendations from the applicant's Warden, in this particular
case, Rardin testified that he did not receive any such input
concerning the plaintiff.[6]  According to Regional Director
Rardin, he selected Gonzalez rather than the plaintiff because
the plaintiff's evaluation reflected concerns in the first six
months of the rating period with respect to planning, monitoring
and evaluating operations, maintaining and providing expertise
and his ability to communicate. Rardin explained that he compared
the two candidates, and noted that Gonzalez scored higher than
the plaintiff in areas of communication ability and technical
expertise, and had held three different Financial Management
assignments in three different institutions while Plaintiff had
only worked in two institutions. Thus, Rardin concluded that
overall Gonzalez was a more experienced and better qualified
applicant. Plaintiff states, however, that Gonzalez was not
qualified or eligible for the promotion because the promotion
would move her up more than 2 pay grades (from GS-7 to GS-11) in

---

[6] Plaintiff maintains that Rardin did get input from Warden Hasty.
However, his only support for this proposition is the affidavit of Rardin in
which Rardin testified that although he generally did receive input from the
Warden, he did not do so in this case. Because plaintiff has not presented
admissible evidence in support of this allegation, he has not properly
disputed defendant's allegation in paragraph 47 of its 56.1 statement that
Rardin did not receive input from the Warden concerning the promotion of
plaintiff. Local Rule 56.1(d). Accordingly, plaintiff has not properly
disputed defendant's allegation in paragraph 47 and it is deemed admitted. *Id.*

violation of the Bureau of Prisons Operating Manual ("Operating
Manual").

The Operating Manual provides in relevant part:

Most qualification standards require that a certain
amount of the qualifying experience be at a level of
difficulty and responsibility equivalent to the next
lower or second lower grade. The grade-level criteria
in the position classification standard or guide help
in making this determination, particularly for
applicant's with experience outside the Federal
Government.

(Bureau of Prisons Operating Manual, Pl. Ex. A).

Plaintiff Not Hired For MCC Position

In July 1998 the Northeast Regional Office of the BOP
advertised the position of GS-10 Trust Fund Supervisor at MCC-New
York ("MCC-New York Position") under vacancy number 98-NERO-055.
The advertised position entailed maintaining the prison
warehouse, maintaining the prison commissary, maintaining the
prison laundry, overseeing operations concerning the inmate
telephone systems, acting as a liaison to the finance department
at the Bureau of Prisons and handling all inmate accounts and
inmate releases.

Plaintiff applied for the MCC-New York Position. The
plaintiff was again placed on the Best Qualified List along with
four other applicants. The other applicants included one Asian
Pacific Islander male, one Hispanic female, one African-American
female and one White male. The list was provided to selecting
official Rardin. Rardin received no input or recommendations

concerning the plaintiff from MCC Warden Hasty or any other source.

At the time that the MCC-New York Position was posted, the Financial Management staff at MCC-New York and the Metropolitan Detention Center ("MDC")in Brooklyn was undergoing reorganization and re-engineering to lower agency costs. The reorganization called for a reduction in force ("RIF"), which was to be achieved by transferring many Financial Management staff to a consolidated office at the Federal Correctional Institution in Fort Dix, New Jersey.

Rather than be transferred to New Jersey, Lisette Ortiz-Garcia, a Hispanic female, requested a lateral reassignment to the available MCC-New York Position. At the time of her request Ortiz-Garcia was a GS-11 Budget and Accounting Officer at MCC-New York. Her duties entailed: maintaining a budget of eight million dollars for the entire institution, dividing the funds into appropriate cost centers, certifying payments on a weekly basis, maintaining the Federal Point of Sales System ("FPPOS") used by the warehouse staff in the commissary, maintaining the commissary inventory, insuring that all staff travel be timely processed, processing and certifying draft payments for staff when the payment requests were untimely received, insuring that all cost center managers properly balanced their fund control on a monthly basis, verifying the validity of all open obligations and

insuring that accounting technicians timely received reports from the warehouse so that bills could be timely paid.

According to Rardin, he decided to transfer Ortiz-Garcia to the MCC-New York position and accordingly did not consider plaintiff, or any other applicant on the Best Qualified List for the position. Defendant maintains it was within Rardin's discretion to do so. Specifically, Rardin testified that the Personnel Management Manual ("Personnel Manual") permits him to "mak[e] accommodations for those who are experiencing a situation that may result in a RIF." Rardin Aff. 16.  The Human Resources Manual expressly provides that "employees may be reassigned from one position to another of the same grade level, based on the needs of the service" and specified that in filling an empty position the selecting official is expressly authorized to either "select any best qualified applicant, fill the position through some other type of placement action, or decide not to fill the position." Human Resources Manual, Ch.3, Pg. 37.

Plaintiff concedes that Rardin has the authority to "utilize a non-competitive selection placement action" in filling open positions but maintains that Rardin may do so only when he follows the correct procedure. According to the deposition testimony of the plaintiff this procedure necessitates that the applicant prove she is qualified and that the selecting officer "pick[] from a group of qualified people to fill the position

utilizing a non-competitive selection process."

<u>Plaintiff's Prior Relationship with Rardin</u>

Prior to receiving notice that he was not selected for the MCC-New York Position, plaintiff enjoyed a cordial relationship with Selecting Official Rardin. When Rardin made his selections for the FCI-Otisville Position and the MCC-New York Position, Rardin had no knowledge of any of plaintiff's daily activities or prior problems at the MCC, including plaintiff's prior EEO activity.

<u>Rardin's Prior Hiring History</u>

Between September 1999 and September 2000 people of color comprised 52% of the selections made by Rardin.[7] Rardin has been recognized by the National Association of Blacks in Criminal Justice for his efforts in the recruitment and retention of African Americans in the BOP in the Northeast Region. As the result of recommendations by Rardin African American males, including FCI-Otisville Warden Fred Menifee and Associate Warden Charles Samuels have been promoted to supervisory posts within the Bureau of Prisons.

<u>Discriminatory Environment at MCC</u>

Plaintiff, relying on affidavits from MCC employees, alleges that African American employees at MCC were generally

---

[7] Neither party defines the term "people of color" but its context suggests that it includes at least African Americans and Hispanics.

discriminated against. Lee Aff. 11; Palmer Aff. 8; Nelson Aff. 6; Furman Aff. 9, 10; Piper Aff. 7. Plaintiff, again relying on the affidavits of MCC employees, also alleges that he was specifically discriminated against because he was an African American and that he was not promoted on that basis. Bailey Aff. 5, Palmer Aff. 8. Finally, plaintiff alleges that Spanish employees were not required to substitute in the warehouse and commissary during staffing shortages and that on one occasion Spanish staff was given ample preparation time for a program review, but that African American employees were not.[8]

## DISCUSSION

### Summary Judgment Standard

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities

---

[8] Defendant argues that these allegations are conclusory and, accordingly, inadmissible. That argument is addressed in the discussion below.

and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). Although all facts and inferences therefrom are to be construed in the light most favorable to the party opposing the motion, *see Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001), the nonmoving party must raise more than just "metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586.

In the employment discrimination context, where a case often turns on the intent of the employer a "trial court must be cautious about granting summary judgment." *Gallo v. Prudential*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Chambers v. TRM*, 43 F.3d 29, 40 (2d Cir. 1994); *Morris v. Amalgamated Lithographers*, 994 F.Supp. 161, 168 (S.D.N.Y. 1998); *Hernandez v. New York City Law Dep't*, 1997 WL 27047 at *7 (S.D.N.Y. 1997). "Because the employer rarely leaves direct evidence of its discriminatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the defendant's explanations for its actions." *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 387 (S.D.N.Y. 1998); *Gallo*, 22 F.3d at 1224; *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990); *Morris*, 994 F.Supp. at 168; *Hernandez*, 1997 WL 27047 at *7. However, mere conclusory allegations of discrimination by plaintiff will not prevail when defendant has provided convincing evidence to

explain its conduct. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995); *Burger v. Litton*, 1996 WL 421449, *7 (S.D.N.Y. 1996); *Engelmann v. National Broad. Co.*, 94 Civ. 5616, 1996 WL 76107 at *7 (S.D.N.Y. Feb.22, 1996). In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern*, 131 F.3d at 312.

## Standards for Race and Gender Discrimination Claim under Title VII

Plaintiff's race and gender discrimination claims are governed by Title VII, which makes it unlawful for an employer to "fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a). Plaintiff alleges that the BOP's failure to promote him to the FCI-Otisville Position and the MCC-New York Position was impermissible race and gender discrimination under this statute.

In order to survive a motion for summary judgment, a Title VII plaintiff must satisfy a three-part burden-shifting test. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 142-43, 120 S.Ct. 2097, 147 L.Ed.2d 105

(2000). Ordinarily, a plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. See *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. *Id.* If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097.

In the present case, the parties do not dispute that the plaintiff has established the first three elements of a prima facie case. Plaintiff is African American and a male – both

protected classes. In regard to both the FCI-Otisville position and the MCC-New York Position, he was qualified for the job he sought, as evidenced by his placement on the "Best Qualified List" of candidates for that job. In both cases, he was not hired for or promoted to the position he sought, thus suffering an adverse employment action. *see e.g. Jute v. Hamilton Sunstrand Corp.,* 420 F.3d 166, 172 (2d Cir. 2005)(failure to promote is an adverse employment action).

The parties dispute whether plaintiff has satisfied the fourth prong of a prima facie case, that defendant's failure to hire the plaintiff occurred in circumstances giving rise to an inference of discrimination. "A showing of disparate treatment - that is a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' - is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)(quoting *Graham v. Long Island Railroad,* 230 F.3d 34, 39 (2d Cir. 2000)). "To be 'similarly situated' the individual[s] with whom [the plaintiff] wishes to compare [himself] must be similarly situated in all material respects," *Shumway v. United Parcel Service Inc.*, 118 F.3d 60, 64 (2d Cir. 1997), though not "in all respects." *McGuiness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir. 2001). "In other words . . . those employees must have a

situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Id.* at 54. In the context of a failure to promote case, a showing that the plaintiff and the individual who was promoted were both qualified for the job may suffice to show that the two were similarly situated. *Mandell*, 316 F.3d at 379 ("In the instant case, plaintiff has adduced enough evidence to support a finding that the promoted officers and plaintiff were sufficiently situated to support an inference of discrimination. [Plaintiff] and the promoted officers were all qualified.") In the present case, plaintiff has demonstrated that he was qualified for both jobs for which he applied, by showing that he was placed on the "Best Qualified List" for both jobs. He has also shown that both jobs went to individuals not members of his protected class because both jobs went to Hispanic women. Thus, plaintiff has made out a prima facie case of discrimination and the burden shifts to the defendant to offer a non-discriminatory reason for its hiring decisions.[9]

---

[9] Defendant argues however, that plaintiff cannot show that he is similarly situated to Gonzalez and Ortiz-Garcia unless he can show that he had "a similar position in terms of work duties performed and positions held" Def. Rep. Br. at 4. In support, defendant cites a list of cases which held that in order to be considered similarly situated the plaintiff "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's." *see e.g. Belgrave v. City of New York*, 1999 WL 692034. However, this view was specifically rejected by the Second Circuit in *McGuiness*, 263 F.3d at 51. ("In particular, the magistrate judge ruled--relying on district court opinions and on its interpretation of our decision in *Shumway v. United Parcel Service, Inc.,* 118 F.3d 60 (2d Cir.1997)--that the similarly situated employee "*must* have reported to the

Defendant states that selecting Official Rardin chose Gonzalez for the FCI-Otisville position because Gonzalez was a stronger, more qualified candidate. The FCI-Otisville Position required that applicants excel in (1) the ability to communicate orally; (2) the ability to plan and organize work; (3) skill in the use of personal computers; (4) the ability to supervise and develop potential of subordinates; and (5) the knowledge of warehouse/inventory management procedures. According to Rardin, Gonzalez was more qualified for the job because she scored higher than the plaintiff in the areas of communication ability and technical expertise and because plaintiff, unlike Gonzalez, needed improvement in his ability to plan, monitor and evaluate operations, maintain and provide expertise, and communicate effectively. Gonzalez also had a wider range and higher level of previous experience. Gonzalez had held Financial Management assignments in three different institutions while plaintiff had only worked in two institutions. Finally, Gonzalez had previously held a GS-9 position, while the highest position ever held by plaintiff was a WS-5.

Defendant also presents a non-discriminatory reason for giving Ortiz-Garcia the MCC-New York Position. That is, defendant

---

same supervisor as the plaintiff, *must* have been subject to the same standards governing performance, evaluation, and discipline, and *must* have engaged in conduct similar to Plaintiff. . . . We disagree.").

chose to laterally transfer Ortiz-Garcia to the position in order
to avoid having to transfer her to Fort Dix as part of an agency
reorganization plan. In doing so, defendant chose not to consider
the applicants who had applied for a promotion to that position
at all. Moreover, Ortiz-Garcia was indisputably more qualified
than the plaintiff. At the time of the lateral transfer Ortiz-
Garcia already held a GS-11 position. Plaintiff held a WS-5
position. Ortiz-Garcia was a senior supervisory member of the
Bureau of Prisons Management staff and her duties included
maintaining a budget of eight million dollars for the entire
institution, dividing the funds into appropriate cost centers,
certifying payments on a weekly basis, maintaining the Federal
Point of Sales System ("FPPOS") used by the warehouse staff in
the commissary, maintaining the commissary inventory, insuring
that all staff travel be timely processed, processing and
certifying draft payments for staff when the payment requests
were untimely received, insuring that all cost center managers
properly balanced their fund control on a monthly basis,
verifying the validity of all open obligations and insuring that
accounting technicians timely received reports from the warehouse
so that bills could be timely paid. In contrast, plaintiff's
experience consisted of overseeing the prison laundry, commissary
and warehouse, ordering merchandise, maintaining proper receipts
and inventory control and providing evaluations for an inmate

staff of 20 and an employed staff of 4. Thus, defendant has presented a legitimate non-discriminatory reason for its choices and is "entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

Plaintiff argues that defendant's proffered legitimate non-discriminatory reasons are pretextual for two reasons. First, he argues that the fact that African American and male employees were being discriminated against generally at MCC suggests that defendant's proffered reasons are a pretext for its discriminatory animus.[10] Second, plaintiff argues that defendant's violation of its own internal hiring procedures in hiring both Gonzalez and Ortiz-Garcia demonstrates that defendant's proffered reason for hiring them is a pretext, and that the failure to hire plaintiff was race and gender discrimination.

*Evidence of General Discrimination*

In support of his allegations that African Americans were generally discriminated against at MCC plaintiff offers statements from several MCC employees. Elaine Lee, an African American inventory management specialist at MCC testified that

---

[10] Plaintiff offers no evidence of gender or race discrimination at FCI-Otisville.

she felt that African Americans were treated differently and that supervisors catered to certain minorities in favor of other minorities. (Lee Aff. 11). Jacqueline Bailey, an African American woman and a GS-9 contracting officer at MCC at the time of plaintiff's complaint testified that "there was a lot of discrimination going on in that office" and that she felt she was treated differently at MCC because she was African American. Roxanne Palmer, an African American female who was employed at the MCC as an administrative assistant at the time of plaintiff's complaint testified that she was treated differently because she was African American. Palmer Aff. 8. David Nelson, an African American male who was employed at the MCC at the time of plaintiff's complaint as an accounting technician, testified that Carl Vitanza "treated African American employees different [sic] from the way he treated Hispanic and White employees of the Federal Bureau of Prisons." Nelson Aff. 6. Jacey Furman, an African American female and a general mechanic at MCC testified that African American employees were treated differently at MCC and that individuals in a certain "clique" got promoted, while those not in the "clique" did not. Furman Aff. 9,10). Harold Piper, an African American male who was a GS-11 supervisory contract specialist at MCC at the time of plaintiff's complaint testified that all the African American employees at MCC believed they were being discriminated against. Piper Aff. 7. In support

of his claim that there was general gender discrimination

plaintiff offers only his own deposition in which he testified

that MCC Assistant Warden Carl Vitanza permitted female employees

to use vulgarity in his presence and to "talk back" to him,

behavior plaintiff alleges Vitanza would not have tolerated from

men. However, bare conclusory allegations of discrimination

cannot withstand a motion for summary judgment. *Meiri v. Dacon*,

759 F. 2d 989, 998 (2d Cir. 1985)(plaintiff's conclusory

allegations that employer wanted to get rid of her because she

was Jewish, and had made unspecified disparaging remarks about

jews insufficient to withstand summary judgment); *Minus v. West*,

2003 WL 21295122, *4 (E.D.N.Y. 2003)(co-workers conclusory

allegation that employer "did not want blacks in his office" and

that he turned his head away when plaintiff passed him in the

hall insufficient to withstand summary judgment); *Payne v. MTA

New York City Transit Authority*, 349 F.Supp. 2d 619, 627

(E.D.N.Y. 2004)(plaintiff's unsubstantiated, subjective belief,

as embodied in his deposition testimony that employer attempted

to remove him from his position because of his race insufficient

to withstand summary judgment). This is because "[t]o allow a

party to defeat a motion for summary judgment by offering purely

conclusory allegations of discrimination, absent any concrete

particulars, would necessitate a trial in all Title VII cases."

*Meiri v. Dacon*, 759 F. 2d 989, 998 (2d Cir. 1985). "Given the

ease with which these suits may be brought" such a result would be unfair to defendants. *Id*.

Plaintiff also offers testimony from MCC employees specifying that he was discriminated against because of his race and that this was the reason that he was not promoted. Bailey Aff. 5, Palmer Aff. 8. However, "Rule 701(b) of the Federal Rules of Evidence 'bars lay opinion testimony that amounts to naked speculation concerning the motivation for a defendant's adverse employment decision' in a Title VII case, unless the person testifying is involved in the employment decision at issue." *Minus*, 2003 WL 21295122, *4 (quoting *Hester v. BIC Corp.*, 225 F.3d 178, 182-85 (2d Cir. 2000). Plaintiff does not allege that Palmer or Bailey were involved in the decision not to promote him. Accordingly, this testimony also cannot suffice to withstand a motion to dismiss.

Finally, plaintiff offers the testimony of Supervisor Piper that Piper "fe[lt] that the Spanish employees at MCC New York were not included when staff had to substitute in the warehouse area and the commissary." Piper Aff. 10. However, this conclusory statement, absent some concrete evidence showing how often employees were required to substitute in the warehouse and commissary and to what extent the employees required to do so were disproportionally African American, is insufficient to withstand summary judgement. *see e.g., Nicholls v. Brookdale*

*University Hosp. and Medical Center*, 2005 WL 1521239, *33 (E.D.N.Y. 2005)(Testimony that "white Physician Assistants were given preferential work shifts and clinical rotations" was conclusory and could not suffice to show that employer's motive for firing plaintiff was discriminatory).

Supervisor Piper also testified that prior to a specific program review Carl Vitanza gave the Spanish staff ample preparation time, but did not give African American employees sufficient preparation time. "Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Jhirad v. TD Securities USA, Inc.* 2003 WL 1872654, *3 (S.D.N.Y. 2003). However, evidence of a single discriminatory event is insufficient to show that an employer was motivated by racial bias. *Patterson v. County of Oneida*, N.Y. 375 F.3d 206, 222 (2d Cir. 2004)(Two "isolated [discriminatory] events over an extended period of time have little intrinsic probative value" in showing that employer was motivated by racial bias in firing plaintiff). Moreover, plaintiff alleges that Carl Vitanza gave Spanish employees more time to prepare than other employees, but concedes that Rardin was responsible for the decisions not to promote him. Isolated evidence of discrimination by one supervisor cannot

defeat summary judgment where plaintiff concedes that the adverse employment action was made by a different supervisor. *Id.*

*Violation of Internal Policies*

Plaintiff next argues that procedural irregularities with respect to the FCI Otisville and MCC-New York positions demonstrate that defendant's stated reasons for hiring Gonzalez and Ortiz-Garcia were a pretext.

Plaintiff first addresses the hiring process for the FCI-Otisville position. He argues that pursuant to the Operating Manual applicants may be promoted to a position a maximum of two steps above the position they hold when they apply for the promotion. Plaintiff argues that because Gonzalez was a GS-7 when she applied for the FCI-Otisville position, a GS-11 position, she was not qualified for the job and could not be hired. However, the Human Resources Manual specifies only that "a certain amount of qualifying experience be at a level of difficulty and responsibility equal to the next lower or second lower grade." Pl. Ex. A. It does not specify that relevant grade is the grade held by the applicant at the time of the application. Thus, although Gonzalez was a GS-7 when she applied, her three years experience as a GS-9 qualified her for promotion to GS-11.

Moreover, even assuming that Gonzalez's promotion did violate Bureau of Prisons procedures, this, in and of itself, is insufficient to demonstrate that the Bureau of Prisons acted with

a discriminatory purpose. *Minus v. West*, 2003 WL 21295122, *4
(E.D.N.Y. 2003)("While it may be true that [the employer] failed
to follow VA policy with respect to promotions, and possibly even
bore some kind of grudge against [the plaintiff], the evidence
certainly does not show that [the employer]'s stated reasons for
his decision not to promote [the plaintiff] were a pretext for
discrimination); *Weinstock v. Columbia University*, 224 F.3d 33,
34 (2d Cir. 2000)(Although there were procedural irregularities
in the promotion process, there was "no evidence that
[plaintiff]'s sex played a role in any alleged procedural
irregularities," and there was therefore, "no evidence of
pretext"). Furthermore, at the time he applied for the FCI-
Otisville Position plaintiff was working in a WS-5 grade
position, the highest grade position he had ever held. Thus,
according to a strict application of BOP promotion policies,
plaintiff was not eligible for the promotion and could not have
been placed on the Best Qualified List or promoted to the FCI-
Otisville position.[11] Even if plaintiff is correct that BOP
policies were ignored so that Gonzalez could be hired, these same
policies were ignored in order to allow plaintiff to be
considered for the position. Because the policy was allegedly
ignored in regard to both plaintiff and Gonzalez, it cannot serve

---

[11] If plaintiff is correct about the BOP's policy, then if the BOP
wished to discriminate against him it could have simply strictly applied the
policy in order to deny him the position.

as evidence of discriminatory intent or pretext. *Feinson v. New School for Social Research,* 1997 WL 742532, *19 (S.D.N.Y. 1997)(*quoting Molthan v. Temple Univ.*, 778 F.2d 955, 962 (3d Cir. 1985)(female plaintiff failed to prove sex discrimination where procedural irregularities plaintiff was considered under were also applied to other candidates, including men).

Plaintiff next addresses the hiring of Ortiz-Garcia for the MCC-New York Position. Plaintiff concedes that Rardin was entitled to close the merit selection process for the MCC-New York position and fill the position using a non-competitive selection placement action, which would, pursuant to Federal BOP policies, accommodate an individual subject to a RIF. However, the plaintiff argues that "[t]he correct procedure is that when you select someone by a non-competitive selection placement action, the person needs to prove to the human resources department that they are eligible for the position." Pl. 56.1 ¶37. Plaintiff also argues that Rardin should have considered all qualified employees subject to RIF instead of picking Garcia without considering other candidates. However, as discussed above, a showing that defendant violated its own promotion or hiring policies is insufficient to withstand summary judgment where plaintiff has not shown that the policies were disregarded for discriminatory reasons. Moreover, in the present case, even if plaintiff is correct about defendant's policies, and even if

defendant had followed those policies plaintiff would not and could not have received a lateral transfer to the position, because he had never occupied an equivalent GS-11 supervisory position. Any alleged procedural irregularity could only have disadvantaged individuals subject to RIF and eligible for lateral transfer to the MCC-New York position. Accordingly, even if defendant failed to follow its own internal policies, this failure is not evidence of its discriminatory animus toward plaintiff. *Zahorik v. Cornell University,* 729 F.2d 85, 93 (2d Cir. 1984)("Departures from procedural regularity . . . can raise a question as to the good faith of the process *where the departure may reasonably affect the decision.*")(emphasis added).

<u>Retaliation Claim</u>

Plaintiff alleges that he was not promoted to the MCC-New York position as retaliation for filing an EEO complaint in 1996. The *McDonnell Douglas* burden shifting analysis used in claims of discrimination in violation of Title VII also applies to retaliation claims brought pursuant to Title VII. *Terry v. Ashcroft,* 336 F.3d 128, 141 (2d Cir. 2003). In order to establish a *prima facie* case of retaliation a plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; (3) the defendant was aware of the activity; and (4) there was a casual connection between the protected activity and the adverse employment action. *Galdieri-Ambrosini v.*

*Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998);

*Richardson v. New York State Dept. of Correctional Service*, 180

F.3d 426 (2d Cir. 1999); *Van Zant v. KLM Royal Dutch Airlines*, 80

F.3d 708, 713 (2d Cir.1996).

However, even assuming plaintiff could establish a prima

facie case, his case must be dismissed. As discussed above,

defendant has proffered a legitimate non-discriminatory reason

for laterally transferring Ortiz-Garcia rather than promoting

plaintiff, and plaintiff has offered no evidence to demonstrate

that this reason is a pretext.


CONCLUSION

For the reasons set forth below, defendant's motion for

summary judgment is granted.

The Clerk is directed to furnish a filed copy of the within

to the parties and the Magistrate Judge.


SO ORDERED.
Dated :    Brooklyn, New York
           May 16, 2006


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge